UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **INTUITIVE SURGICAL OPERATIONS, INC.,** | : | CASE NO. |
| 1266 Kifer Road | : | |
| Sunnyvale, California 94086 | : | JUDGE |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | COMPLAINT |
| **MIDBROOK, LLC,** | : | |
| 1300 Falahee Road | : | |
| Jackson, Michigan 49203 | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

For its Complaint against Defendant Midbrook, LLC ("Midbrook"), Intuitive Surgical Operations, Inc. ("Intuitive") alleges as follows:

## PARTIES

1. Intuitive is a Delaware corporation with its principal place of business in Sunnyvale, California.

2. Midbrook is a Michigan limited liability company with its principal place of business in Jackson, Michigan. Upon information and belief, no member of Midbrook is a resident of California or Delaware.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this civil action under 28 U.S.C. § 1332(a)(2) because Intuitive and Midbrook are citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4.     Venue in this action is proper pursuant to 28 U.S.C. § 1391 because Midbrook is subject to personal jurisdiction in this judicial district and a substantial part of the events giving rise to Intuitive's claims occurred in this district.

## FACTUAL BACKGROUND

**A.     Intuitive Obtains a Judgment Against Midbrook, Inc.**

5.     On or about December 23, 2013, Intuitive and Midbrook, Inc. ("MINC") entered into a Loan Agreement (the "Loan Agreement"). A copy of the Loan Agreement is attached hereto as **Exhibit A**.

6.     Under the Loan Agreement, Intuitive lent MINC nearly $600,000 to finance MINC's fabrication of washer products conforming to custom specifications. (Loan Agreement, ¶ 1.)

7.     In exchange, MINC agreed to "repay Intuitive the full Loan Amount, Interest, and any other charges" stated in the Loan Agreement "[w]ithin twelve (12) months from the date Intuitive loans the Loan Amount to Midbrook[.]" (*Id*., ¶¶ 2-3, 5, 7.)

8.     MINC further agreed that in the event it became necessary for Intuitive to bring legal or other action "to enforce the repayment of this loan, then Midbrook agrees to be responsible for Intuitive's enforcement costs including attorney fees, court costs, and expenses." (*Id*., ¶ 8.)

9.     Intuitive dispersed the agreed-upon sum to MINC on December 30, 2013.

10.    MINC was thus obliged to repay Intuitive on or before December 30, 2014.

11.    MINC failed, however, to repay any portion of the loan amount.

12.    As a result, Intuitive issued demand letters to MINC, but MINC refused to comply with its obligations.

2

13. Ultimately, Intuitive filed a Complaint against MINC in the United States District Court for the Northern District of California and, on June 17, 2016, Intuitive obtained a judgment against MINC in the amount of $662,942.95 (the "Judgment"). A copy of the Judgment is attached hereto as **Exhibit B**.

**B.    Midbrook Acquired Certain of MINC's Assets and Liabilities.**

14. On or about June 23, 2014, Hillsdale County National Bank ("Hillsdale") filed a complaint against, *inter alia*, MINC in the Circuit Court for Jackson County, Michigan ("MINC Lawsuit").

15. Intuitive was not named a defendant in the MINC Lawsuit, nor was it ever provided notice of the proceedings therein.

16. As part of that MINC Lawsuit, the court appointed a receiver to operate MINC on an interim basis while simultaneously marketing and selling MINC's assets and liabilities. A copy of the Order Appointing Receiver is attached hereto as **Exhibit C**.

17. The receivership order expressly prohibited MINC and its officers from directly or indirectly negotiating a sale of MINC's assets and liabilities. (Order Appointing Receiver, ¶ 15).

18. Despite that prohibition, MINC's Chief Executive Officer, Milton Lutz, brokered the sale of certain of MINC's assets to Midbrook, again, with no notice to Intuitive.

19. On or about December 18, 2014, the receiver entered into an Asset Purchase Agreement (the "APA") with MDBRK, LLC ("MLLC")—which later became Midbrook—whereby MDBRK purchased certain of MINC's assets. A copy of the APA is attached hereto as **Exhibit D**.

20. After extensive due diligence (APA, ¶ 4.1.5), Midbrook assumed "any executory obligations of [MINC's] continued performance arising in the ordinary course of business under any contracts and commitments that become performable or payable on or after the Closing Date," defined in the APA as "December 19, 2014[.]"  (APA, ¶¶ 1.3, 5.1.)

21. Midbrook's informed and bargained-for commitment to assume MINC's liabilities unambiguously includes MINC's responsibilities under the Loan Agreement because MINC's repayment obligation to Intuitive did not arise until December 30, 2014, and was thus an executory obligation, incurred in the ordinary course of MINC's fabrication business, that became payable after the December 19, 2014 Closing Date.

**C.     Midbrook is a Mere Continuation of MINC.**

22. Under the APA, Midbrook acquired all of the operating assets relevant to MINC's "Business"—that is, all tangible and intangible assets "utilized in [MINC's] fabricator, washer service, and HOD water bottling equipment and service businesses, and in its other currently remaining business activities[.]"  (APA at Recital A, ¶ 1.1.)

23. The APA makes clear that "[i]t is the intention of the parties that the Business Assets shall include all of the tangible assets that are used in, or are necessary for the operation of, the Business as of the date of this Agreement . . . ."  (APA at ¶ 1.1.6.)

24. Consistent with that language, as well as Midbrook's assumption of obligations incurred in the ordinary course of MINC's operations, Midbrook in fact has continued MINC's fabrication business.

25. Since its inception, Midbrook has employed many individuals previously employed by MINC, such as Milton Lutz (MINC's former Chief Executive Officer who signed the APA on MINC's behalf), Phillip Willis, and Ernest Houghton.

4

26. Moreover, Midbrook has consistently held itself out to consumers in email and print marketing campaigns as a continuation of MINC.

27. For example, in a February 2016 email bearing subject line "Our Demise is untrue MIDBROOK IS STILL HERE[,]" MLLC represented that it was "Still here for over 40 years in Business . . . We are still here and going strong after 40 years call [sic] for all your Custom Fabrication and Industrial Washer needs[.]"  A copy of the February 2016 email is attached hereto as **Exhibit E**.

28. Similarly, in the July 2016 issue of *Jackson Magazine*, Midbrook advertised itself as a "[m]anufacturer providing sheet metal fabrication services since 1976[,]" with "a 2nd Industrial Washer Equipment division which has delivered over 1,000 cleaning and drying systems throughout the world."  An excerpt of the July 2016 magazine article is attached hereto as **Exhibit F**.

29. Given that Midbrook did not exist until December 2014, Midbrook's public representations and advertisements cannot be true *unless* Midbrook is merely continuing MINC's fabrication business.

### COUNT I – SUCCESSOR LIABILITY
### (Declaratory Judgment and Money Damages)

30. The allegations contained in the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

31. Midbrook is a transferee or purchaser of assets of MINC.

32. Midbrook has assumed certain of the liabilities of MINC, including but not limited to the Loan Agreement and Judgment because:

- Midbrook expressly or impliedly agreed to assume the Loan Agreement and Judgment;

- Midbrook is merely a continuation of MINC;
- Midbrook and MINC entered into the APA fraudulently in order to escape the liabilities of MINC;
- The APA lacked elements of good faith and protections for creditors like Intuitive;
- There is continuity of ownership, management, personnel, physical location and business operations between MINC and Midbrook; and
- Midbrook has held itself out to the public as a continuation of MINC.

33. An actual dispute or controversy exists over whether Midbrook is the successor for certain debts of MINC.

34. It is important for the dispute or controversy to be resolved.

35. Based on the foregoing, Midbrook should be declared the successor in interest of MINC and declared to be liable for certain debts of MINC.

36. Based on the foregoing, as successor to MINC, Midbrook should be liable for certain of the liabilities of MINC, including MINC's liability to Inutitive for breach of the Loan Agreement, and a money judgment should be entered against Midbrook for the debts owed Intuitive under the Loan Agreement, including, without limitation, the Judgment.

## COUNT II – BREACH OF CONTRACT

37. The allegations contained in the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

38. Midbrook has assumed certain of the assets and liabilities of MINC, including but not limited to the Loan Agreement.

39. Intuitive has complied with its obligations under the Loan Agreement.

40. In material breach of the Loan Agreement, Midbrook failed to repay Intuitive as required under the Loan Agreement.

41. As a result, Intuitive has been damaged in the amount of the debts due under the Loan Agreement including, without limitation, the Judgment and all reasonable attorneys' fees and costs incurred by Intuitive, as required by paragraph 8 of the Loan Agreement.

**WHEREFORE**, Intutive demands as judgment:

1. A declaration that Midbrook is liable for the Judgment;

2. A money judgment against Midbrook in the amount of the debts due under the Loan Agreement including, without limitation, the Judgment;

3. All attorneys' fees and other costs of collection incurred by Intuitive in bringing this action;

4. Pre- and post-judgment interest at the statutory rate; and

5. Such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ Nicholas J. Pieczonka
Nicholas J. Pieczonka
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
npieczonka@taftlaw.com

*Attorney for Intuitive Surgical Operations, Inc.*